F I L E D
 Clerk
District Court

OCT 26 2020

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| IN RE: JUNIOR LARRY HILLBROOM LITIGATION | Case No. 1:10-cv-00009<br><br>**DECISION AND ORDER GRANTING CROSS-CLAIMANT ISRAEL'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I. INTRODUCTION

Before the Court is Defendant and Cross-Claimant Barry Israel's motion for summary judgment, or alternatively, partial summary judgment against Keith Waibel. (Mot. for Summary Judgment "Motion," ECF No. 538.) Pro se Defendant and Cross-Defendant Keith Waibel filed an opposition (Opp'n, ECF No. 541) and Israel filed a reply ("Reply," ECF No. 542). The matter came on for a hearing on October 1, 2020, at which time the Court took the matter under submission. Having considered the briefs, the applicable law, and the arguments of counsel, the Court DENIES Israel's motion for summary judgment but GRANTS the alternative motion for partial summary judgment for the following reasons.

## II. BACKGROUND

This civil action was initiated in 2010 when Plaintiff Junior Larry Hillbroom (Junior) sued his lawyers, Defendants Israel and David Lujan, and his trustee, Waibel, for their conspiracy to

1

fraudulently increase the attorneys' contingency fee in Junior's recovery of approximately $100 million from his father's estate—from 38 percent to 56 percent. (Complaint, ECF No. 1.)

After four years of litigation on the issue of the Court's personal jurisdiction over Israel, Israel in 2014 filed six cross-claims against Junior and Waibel arising under state law—(1) indemnification, (2) partial equitable indemnification, (3) contribution, (4) breach of contract, (5) quantum meruit, and (6) money had and received (Cross-Claims ¶¶ 16–48, ECF No. 115), of which the Court subsequently dismissed in regards to Junior (Order Granting Junior's Motion to Dismiss, ECF No. 130). Israel's cross-claims also included claims against Waibel only for (7) libel and (8) slander per se. (Cross-Claims ¶¶ 49–63.) The libel and slander claims allege that Waibel published statements in letters and emails on or about August 2008 that Israel is a criminal, for the purpose of harassing Israel in furtherance of a threat to make Israel make payments to the JLH Trust. (*Id*. ¶¶ 49, 54.) Israel also alleges that Waibel made verbal statements in August 2008 in front of Jan Vail, Paul Flannery, and Junior indicating that Israel was a criminal, which resulted in Flannery and Junior filing lawsuits against him. (*Id*. ¶¶ 56–57, 62.)

On August 27, 2020, Israel filed this motion for summary judgment, or alternatively partial summary judgment, asking the Court to grant him judgment on his seventh (libel) and eighth (slander per se) causes of action, or at least summary adjudication that: Waibel made defamatory per se statements to others regarding Israel, Waibel negligently made defamatory per se statements to others regarding Israel, or Waibel intentionally and with malice made defamatory per se statements to others regarding Israel. (Motion, ECF No. 538.) In support of his motion, Israel attached a separate statement of undisputed facts, declarations, and exhibits. (*See* Separate Statement of Undisputed Facts "SSUF,"

ECF No. 538-1; Decl. of Barry Israel, ECF No. 538-2; Decl. of Theodore Frank, ECF No. 538-3; Exhibits, ECF Nos. 538-5 through ECF Nos. 538-30.)

Waibel timely filed his pro se opposition to the motion without any declarations, affidavits, or other attachments (Opp'n, ECF No. 541), and Israel filed a reply (Reply at 1–6, ECF No. 542).

### III.  LEGAL STANDARD

A court must grant summary judgment on a claim or defense—or part of each claim or defense—if there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marin Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  An issue is "genuine" if a reasonable jury could

3

return a verdict in favor of the non-moving party on the evidence presented; a mere "scintilla of evidence" is not sufficient. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court views the evidence in the light most favorable to the non-moving party and draws "all justifiable inferences" in that party's favor. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (quoting *Angel v. Seattle–First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)).

In a diversity action raising state law claims, the substantive law of the forum state applies.[1] *See Medical Lab. Mgmt. Consultants v. ABC*, 306 F.3d 806, 812 (9th Cir. 2002). "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980). "When a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 885 n. 7 (9th Cir. 2000) (quoting *Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir. 1993)).

---

[1] The forum state in this matter is the Commonwealth of the Northern Mariana Islands. Thus, to the extent that Israel references supplemental California authority, the Court will not consider that authority.

4

In the absence of controlling precedent from the state's highest court, a court may "look to other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law." *Burns v. Int'l Ins. Co.*, 929 F.2d 1422, 1424 (9th Cir. 1991). "When there is no dispositive Commonwealth authority on an issue, we may look to persuasive authority from other jurisdictions." *Commonwealth v. Lot No. 353 New G*, 2012 MP 6 ¶ 16 (N. Mar. I. 2012). Rules of the common law, including the Restatements, "shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law to the contrary." 7 CMC § 3401.

### IV. ANALYSIS

Israel argues that he has satisfied his burden on summary judgment by showing uncontroverted evidence of Waibel's defamatory statements and the resulting injury to him. (Motion at 8, ECF No. 538.) The Court agrees that Waibel undisputedly made defamatory statements regarding Israel. Nevertheless, a genuine dispute exists regarding whether Israel is entitled to his alleged damages. Therefore, as the Court will explain, it cannot grant Israel summary judgment on his libel and slander per se causes of actions.

  a. <u>Defamation</u>

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559 (1977). In the Commonwealth of the Northern Mariana Islands (CNMI), the elements for defamation generally follow those of the Restatement (Second) of Torts §

558 (1977), modified by local case law and constitutional limitations.[2] *Tan v. Younis Art Studio, Inc.*, 2007 MP 11 ¶ 14, 30 (N. Mar. I. 2007). To establish liability for defamation, a plaintiff must show:

> (a) a false and defamatory statement reasonably susceptible of being understood as of and concerning each individual complainant;
> (b) an unprivileged publication to a third party;
> (c) fault amounting to at least negligence on the part of the publisher, but when the complainant is a public figure or public official, the publisher must have acted with actual malice; and
> (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Id.* ¶ 30.

Israel's libel claim revolves around Waibel referring to him as "the criminal in Viet Nam" in a letter to Jan Vail dated August 5, 2008, and the slander per se claim revolves around Waibel verbally stating multiple times that Israel was a criminal to Junior, Paul Flannery, and Jan Vail in August 2008 in Cebu, Philippines.[3] (*See* SSUF ¶¶ 1, 3.)

---

[2] The CNMI Supreme Court has also noted that where there are gaps in defamation law:

> [C]ourts must first look to local written law, which includes our case law adopting and/or adapting Restatement provisions. To the extent local written law is lacking, the Restatement fills the gaps. However, since this process of amalgamating local law and Restatement principles increases the potential for intrusion into protected First Amendment areas, special care must be taken when adopting new law. Any modifications must be consistent with *New York Times* and its progeny.

Tan, 2007 MP 11 ¶ 31; *see generally New York Times v. Sullivan*, 376 U.S. 254 (1964).

[3] Israel's separate statement of undisputed facts also indicates that "Waibel verbally stated that Israel was a criminal to Roger Slater and others in November and December 2006." (SSUF ¶ 2.) This asserted fact is supported by the declaration of Roger Slater. (*See* Exhibit 8, herein "Decl. of Roger Slater," ECF No. 538-26.) The Court, however, cannot consider this statement at this stage for Israel's slander per se claim because the facts surrounding the 2006 statement were never alleged in the cross-complaint, which instead only alleged that Waibel called Israel a criminal in Cebu around August 2008. (*See* Cross-Claims ¶ 56). Israel must seek leave to amend his complaint in order to assert a claim based on these new facts.

To prove that the libel statement was made, Israel included a copy of Waibel's email to Jan Vail as an exhibit, which does reference "the criminal in Viet Nam." (*See* Exhibit 5, "Email", ECF No. 538-5.) Portions of Jan Vail's deposition were also attached, where he states that he understood the criminal reference in the email to refer to Israel since Waibel was asking Vail to keep tabs on Israel. (Exhibit 10, herein "Jan Vail Deposition" at 128:1–128:9, ECF No. 538-27.) Israel also attached Waibel's deposition, where Waibel admits that he understood the criminal statement to refer to Israel. (Exhibit 5, Waibel Deposition at 722:2–722:8, ECF No. 538-22). Thus, because Israel has produced ample evidence that Waibel called him a criminal by email, the burden shifted to Waibel to establish a genuine factual dispute for trial. *See Matsushita Elec. Indus.*, 475 U.S. at 587. In response, Waibel admits that he made the statement but emphasizes that he never mentioned Israel's name in the email. (Opp'n at 4.) Defamation, however, only requires that the statement be reasonably suspected to concern the individual in question. *Tan*, 2007 MP 11 ¶ 30.

As evidence that Waibel called Israel a criminal in front of Junior, Paul Flannery, and Jan Vail in August 2008, Israel attached Jan Vail's deposition, which included the following conversation:

> Q. Well, let me ask you this: At that breakfast meeting where they were discussing this lawsuit, did he ever refer to Barry as anything other than a criminal? Did he call him "Barry"or did he just say "that criminal" or did he say "Barry is a criminal"? How do you recall it?
>
> A. He said, he is a criminal. And, you know, you need to go after him.

(Jan Vail Deposition at 126:9–126:16.) Waibel, in response, does not dispute that the statement was made, but he does deny mentioning Israel's name specifically in front of the group. Nevertheless, as

7

discussed previously, identifying a specific individual by name is not required if the statement is reasonably suspected to concern that person. (Opp'n at 4.)

To show that the statements were false, Israel included his own declaration stating, "I have never been convicted of any criminal conduct by any judicial authority the world over. Nor have I ever been charge [*sic*] by any law enforcement or other government authority with criminal conduct." (Decl. of Barry Israel ¶ 3.) Waibel's deposition was also attached as support, including his statement that "none of us were charged with anything." (Exhibit 4E, Waibel Deposition at 465:11–465:12, ECF No. 538-16). In response, Waibel only brought up "possible criminal" acts of Israel, but "possible" criminal acts are insufficient to establish the truth that someone actually committed a crime. (*See* Opp'n at 4–5.) Given Waibel's failure to meet his burden to create a genuine issue that the statements were false, the Court finds that Waibel did publish false and defamatory statements reasonably susceptible of being understood as concerning Israel. There is also no indication that the statements he made were privileged. *See* Restatement (Second) of Torts §§ 585-592A (recognizing, for example, absolute privilege for statements made in legislative proceedings, judicial proceedings, or between husband and wife).

As to fault, Waibel briefly argues without supporting evidence that Israel is a public figure because he was on the cover of *Saigon Times* and spoke with the *New York Times*, writers of a book, and producers of a film. (Opp'n at 4.) However, the Court agrees with Israel's position that Israel is not a public figure. "Public figures are those having 'assumed roles of special prominence in the affairs of society.'" *Tan*, 2007 MP 11 ¶ 40 (citing *Gertz v. Robert Welch*, 418 U.S. 323, 345 (1974)). Israel does not meet that definition.

In considering whether he may be a limited public figure, the CNMI uses the three-part test established in *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1296–99 (D.C. Cir. 1980), which requires the court to: (1) isolate the public controversy, (2) determine the plaintiff's role in it, and (3) determine whether the alleged defamation is "germane to the plaintiff's participation in the controversy." *Tan*, 2007 MP 11 ¶ 41. As to the first step, finding that an event rises to the level of public controversy "requires more than merely demonstrating public interest in the matter . . . . 'Rather, a public controversy is a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants.'" *Tan*, 2007 MP 11 ¶ 42 (quoting *Waldbaum*, 627 F.2d at 1296). Whether or not Israel is a criminal does not have ramifications to the public such that Waibel's statements involve a public controversy, and the Court need not consider the next two steps. Accordingly, Israel only needs to prove negligence in order to recover. *See id.* ¶ 30; *see also Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 763 (1985) (concluding that "recovery of presumed and punitive damages in defamation cases absent a showing of 'actual malice' does not violate the First Amendment when the defamatory statements do not involve matters of public concern.").

Nonetheless, Israel does argue that Waibel made the statements with actual malice (Motion at 14), but he asks the Court for at least summary adjudication that the statements were negligently made (*id*. at 2). Actual malice is defined as acting "with knowledge of falsity or with reckless disregard for truth or falsity." *Tan*, 2007 MP 11 ¶ 49. "To prove a defamatory statement was published with reckless disregard for the truth, a plaintiff must show the statement was made 'with a high degree of awareness of . . . probable falsity.'" *Id*. ¶ 52 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). There

9

must be "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id*. Negligence, on the other hand, is "conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." Restatement (Second) of Torts § 282 (1965).

To demonstrate actual malice, Israel relies on Waibel's deposition testimony where in response to the question "You made this statement to Jan Vail knowing that Barry Israel had not been convicted of a crime?" Waibel answered, "That's it." (Waibel Deposition at 729:13–729:16, ECF No. 538-22.) However, in that same deposition, Waibel responded to the question "Do you believe that Barry Israel engaged in criminal activity with regard to Junior's trust and Junior?" with "I do not know." (*Id*. at 713:7–713:10). In his opposition to Israel's motion, Waibel claims to "have personal knowledge of criminal acts committed by Israel, as [he] participated in those acts." (Opp'n at 4.) In considering that type of response, "courts are to make reasonable allowances for pro se litigants and to read pro se papers liberally." *McCabe v. Arave*, 827 F.2d 634, 640, n. 6 (9th Cir. 1987) (citing *Traguth v. Zuck*, 710 F.2d 90, 95 (2nd Cir. 1983)). The Court therefore finds that there is contradictory evidence as to whether Waibel made the statements with knowledge of falsity or with reckless disregard for truthfulness. Therefore the Court cannot conclude as a matter of law that Waibel made the statements with actual malice. The Court can only give summary adjudication that the statements were negligently made, as a parties' failure to ascertain the truth of the statement before publishing it falls below the ordinary standard of care. *See New York Times v. Sullivan*, 376 U.S. 254, 258 (1964) (noting that the evidence supports at most a finding of negligence where the Times published an advertisement without checking its accuracy).

Finally, to establish liability for a defamation, a plaintiff must show that the statement is actionable. *Tan*, 2007 MP 11 ¶ 30. "If the defamation was printed, known as libel, it was actionable per se." *Tan*, 2007 MP 11 ¶ 11 (citing Restatement (First) of Torts § 569 (1938)). "If the statements were communicated orally, known as slander, special damages were necessary unless the statements fell into one of four prescribed slander per se categories." *Id*. (citing Restatement (First) of Torts § 570, 575). The Restatement (Second) of Torts § 571 provides that "[o]ne who publishes a slander that imputes to another conduct constituting a criminal offense is subject to liability to the other without proof of special harm if the offense imputed is of a type which, if committed in the place of publication, would be (a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude." Here, since Waibel undisputedly wrote and sent an email calling Israel a criminal, the libel is actionable per se regardless of harm. Because the verbal statements explicitly called Israel a "criminal"—reasonably construed to be in line with his actions regarding the exorbitant 56 percent attorneys fees from the JHL Trust, thereby imputing a crime involving moral turpitude—the statements are actionable per se regardless of special harm. *See* Restatement (Second) of Torts § 571 cmt. e ("It is not necessary that the defamer charge any particular criminal offense either by name or description, if the words used imply some crime of the type stated in Clauses (a) and (b).").

The Court therefore grants partial summary judgment as to Israel's claims that Waibel made defamatory statements per se to others regarding Israel, and that Waibel *negligently* made defamatory statements per se to others about him.

11

b. Damages

In moving for summary judgment, Israel argues that he is undisputedly entitled to $1,442,877.67 in special damages plus $400,000 for punitive damages. (Motion at 16–20; SSUF ¶¶ 10,16, 18–19, 21). In support, he includes his own declaration indicating that he spent $63,417 in attorney fees defending against Paul Flannery's 2008 lawsuit; $148,176.79 in attorney fees due to FBI investigations starting November 2003; $1,177,828.88 in attorney fees and costs to defend against Junior's lawsuit; $2,852.50 to defend against Waibel's cross-claims; and $50,602.50 in attorney fees to prosecute this current cross-claim against Waibel—all as a result of Waibel's statements. (Decl. of Barry Israel ¶¶ 5–12.) In opposition, Waibel refutes, without any supporting evidence, that his statements caused Israel's damages. (Opp'n at 2–3.) This Court concludes that because Israel failed to carry his burden of production in establishing no genuine dispute of material facts regarding his entitlement to the stated damages, as discussed further below, Waibel has no obligation to produce evidence to refute the allegation he caused the claimed damages. *See Nissan Fire & Marin Ins. Co., Ltd.*, 210 F.3d at 1102–03.

In the CNMI, recovery for defamation requires:

(a) for public officials and public figures, presumed and punitive damages are available on a showing of actual malice;
(b) for private figures when the defamatory statements involve a matter of public concern, recovery is limited to actual injury when only negligence is proven, but presumed and punitive damages are available on a showing of actual malice;
(c) for private figures when the defamatory statements involve a matter of private concern, recovery of presumed and punitive damages are available on a showing of negligence;
(d) for all complainants, the additional showing of traditional malice is required for recovery of punitive damages when punitive damages are available.

*Tan*, 2007 MP 11 ¶ 30.

Given that Israel is a private figure and the statements involve a matter of private concern, presumed and punitive damages are available upon a showing of negligence. Having established that a defamatory statement was negligently made, Israel is entitled to presumed damages, that is, general damages for "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *See Gertz,* 418 U.S. at 350. Nonetheless, even recovery for private plaintiffs on presumed damages requires proof of "actual injury" and any award on the basis of that injury "must be supported by competent evidence concerning the injury." *See id.; see also Tan*, 2007 MP 11 ¶ 28 (noting that after *Gertz* and its finding that common law defamation's strict liability ran afoul of the First Amendment, "private plaintiffs had to demonstrate 'actual injury' in order to recover."). Here, Israel has provided no evidence at all regarding general damages.

Instead, Israel argues that he suffered $1,442,877.67 in actual, special damages in attorney fees and costs incurred in defending several other lawsuits due to Waibel's statements. (Motion at 16–20.) "One who is liable for either a slander actionable per se or a libel is also liable for any special harm legally caused by the defamatory publication." Restatement (Second) of Torts § 622 (1977). However, the touchstone of liability for harm requires legal causation. *See id*; *see also* Restatement (Second) of Torts § 430 (1965) (indicating that for a negligent actor to be liable for harm requires that "the negligence of the actor be a legal cause of the other's harm."). "Defamation is a legal cause of special harm to the person defamed if (a) it is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the publisher from liability because of the manner in which the publication has resulted in the harm." Restatement (Second) of Torts § 622A (1977). Ordinarily, "this means that

the defamation must be a necessary antecedent of the harm, which would not have occurred without it." *Id*. cmt. b. Where there could be multiple causes to the special harm, the defamation must have "played a substantial part in bringing it about." *Id*.

Israel argues it is undisputed that Paul Flannery filed a lawsuit against Israel based on Waibel's defamatory statement, such that he incurred $63,417 in attorney's fees defending against the action. (SSUF ¶¶ 9–10; Decl. of Barry Israel ¶ 5.) However, the only support for this basis is a third-party's—namely, Jan Vail's—opinion that Waibel's statement caused Paul Flannery to file suit. (Jan Vail Deposition at 131:21–132:22.) That same deposition that Israel relies on reveals some underlying dispute surrounding an investment failure and money that Israel owed Flannery, which a factfinder could reasonably determine to be the sole legal cause of the lawsuit rather than Waibel's act of calling Israel a criminal. *See id*. at 124:7–125:9; *see also* Restatement (Second) of Torts § 622A cmt. c ("[H]arm that results from the conduct of the person to whom publication is made, which would be wrongful on his part even if the publication were true, is normally not legally caused by the defamation").

As to the FBI statements, Israel argues that he incurred $148,176.79 in attorney fees in defending against the FBI investigation from November 2003 to December 2007 and February 2005 to October 2006 due to Waibel's statements. (SSUF ¶¶ 15–16; Decl. of Barry Israel ¶ 6.) However, these costs in representation clearly predate the time of when the alleged defamatory statements were made—August 2008—such that Waibel's statements could not have been the cause of Israel's harm in having to defend against the FBI investigations.

14

Israel's $1,177,828.88 in attorney fees and costs to defend against Junior's lawsuit likewise cannot undisputedly be said to have been incurred as a result of Waibel's defamatory statements.  (*See* SSUF ¶¶ 17–18; Decl. of Barry Israel ¶ 10.) Israel's evidence that Junior filed a lawsuit based on Waibel's statements are again based on the beliefs of third parties. (*See* Decl. of Roger Slater ¶¶ 14, 18, 21; Jan Vail Deposition 121:13–122:10.)  This evidence is contradicted, however, by Israel's own factual assertions that Junior and Waibel agreed to a shake-down lawsuit scheme sometime in 2006 or 2007, predating when the statements were made. (*See* Cross-claims ¶¶ 8, 9.)  The evidence is further contradicted by Junior's deposition testimony, provided as evidence by Israel, where Junior indicates that Roger Slater's accounting work "was part of [the] persuasion in [his] head to file this lawsuit[.]" (Exhibit 2, "Junior Hillbroom Deposition" at 603:7–603:8, ECF No. 538-6.)  Even in his reply, Israel attaches another excerpt of Junior's deposition to support that Waibel helped Junior come up with the concept of the lawsuit. (*See* Junior Hillbroom Deposition at 39:19–39:22, ECF No. 542-2.) In the same excerpt, however, when asked "When did Waibel first talk to you about the idea of this lawsuit?" Junior responded "I had asked him to help me as my trustee to file the lawsuit. That's how it happened." (*Id*. at 39:23–39:26.) A factfinder could therefore reasonably find that the lawsuit was the result of the underlying contingency fee issue, that Junior approached Waibel to seek aid in the lawsuit, and that Waibel's mere statements of criminality had nothing to do with the lawsuit being filed. *See* Restatement (Second) of Torts § 622A cmt. c.

Furthermore, it is unclear how Waibel's own cross-claims against Israel for indemnity and contribution (ECF No. 8, Case 1:10-cv-31) are a result of his own defamatory statements against Israel such that Israel incurred $2,852.50 in actual damages to defend the action (SSUF ¶ 19; Decl. of Barry

Israel ¶ 11.) Moreover, because the Court cannot conclude that Israel is entitled to a complete summary judgment on his libel and slander per se claims, the Court also cannot conclude as a matter of law that Israel is entitled to the $50,602.50 incurred in prosecuting those claims. (*See* SSUF ¶ 21; Decl. of Barry Israel ¶ 12.)

Thus, while the Court agrees with Israel that he is entitled to presumed damages as a matter of law, no evidence has been provided supporting any amount. Regarding Israel's entitlement to special damages, the Court disagrees with Israel's claim that the damages are undisputedly $1,442,877.67. Rather, the question of presumed and/or special damages should be left for the jury to decide.

As for punitive damages, having established that a defamatory statement was made and that there was a showing of negligence, punitive damages are available to Israel. *See Tan*, 2007 MP 11 ¶ 30. Nonetheless, while punitive damages are *available*, "for all complainants, the additional showing of traditional malice is required for *recovery* of punitive damages." *Id.* (emphasis added). Traditional malice is that of "an evil intent or a motive arising from spite or ill will" and "concerned with the publisher's mindset towards the plaintiff." *Id.* ¶ 53 (citations omitted). In moving for summary judgment, Israel only referred to Waibel's "greed" for money that led him to mismanage funds for Junior. (Motion at 19.) However, greed for Junior's money has nothing to do with Waibel's mindset towards Israel. Moreover, Israel's argument that he is entitled to $400,000 in punitive damages is predicated as a ratio to his actual damages. *See* Motion at 19–20; *see also Jasper v. Quitugua*, 1999 MP 4 ¶ 8, n. 3 (N. Mar. I 1999) ("Punitive damages must bear a reasonable relation to actual damages."). However, given Israel's failure to establish traditional malice and to demonstrate entitlement as a matter of law to $1,442,877.67 in actual damages, the Court finds that there is a

reasonable dispute as to the amount of punitive damages owed such that this issue should be left for the jury to decide.

## V.   CONCLUSION

For the foregoing reasons:

1. Summary judgment is DENIED as to Israel's seventh cause of action (libel);

2. Summary judgment is DENIED as to Israel's eight cause of action (slander per se);

3. Partial summary judgment is GRANTED as to Israel's claim that Waibel made defamatory statements per se to others regarding Israel;

4. Partial summary judgment is GRANTED as to Israel's claim that Waibel made the defamatory statements negligently; and

5. Partial summary judgment is DENIED as to Israel's claim that Waibel made the defamatory statements intentionally and with malice.

IT IS SO ORDERED this 26th day of October, 2020.

*[signature]*

RAMONA V. MANGLONA
Chief Judge