FILED
Clerk
District Court
MAY 26 2022
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| IN RE: JUNIOR LARRY HILLBROOM LITIGATION | Case No.: 1:10- CV-00009<br><br>**MEMORANDUM DECISION REGARDING MOTIONS IN LIMINE** |

Before the Court are Plaintiff Junior Larry Hillbroom's ("Hillbroom") motions in limine to exclude Defendant David Lujan's[1] ("Lujan") expert witnesses and testimony (ECF No. 590) and to exclude improper character evidence (ECF No. 594). Also before the Court is Plaintiff Hillbroom and Defendant Keith Waibel's ("Waibel") joint motion to allow testimony via video teleconferencing ("VTC"). (ECF No. 593.) All three matters were heard at a motion hearing (Min., ECF No. 611), during which time the Court DENIED Hillbroom's motion in limine to exclude Lujan's expert witnesses, GRANTED the joint motion to allow VTC testimony, and GRANTED Hillbroom's unopposed motion in limine to exclude improper character evidence. The Court now issues this decision memorializing its reasons.

I. **PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EXPERT WITNESSES AND TESTIMONY**

Hillbroom seeks to exclude Lujan's untimely designated expert witnesses John S. Luna and Robert L. Kehr, Esq. and their expert testimonies. (Mot. in Limine to Exclude Expert ("Mot."), ECF No. 593.) Lujan filed an opposition (Opp'n to Mot. ("Opp'n"), ECF No. 595), and

---

[1] Plaintiff's claims against Defendant Lujan have since been dismissed with prejudice. (*See* Order of Dismissal, ECF No. 621). The Court nonetheless issues this decision to memorialize its reasons.

Hillbroom filed a reply ("Reply," ECF No. 609). The Court DENIED the motion for the following reasons.

A. **Background**

According to the Ninth Amended Scheduling Order in this matter, Hillbroom's deadline to provide his expert disclosure notice was August 26, 2019, and the deadline for Defendants to provide their expert disclosure notice was September 6, 2019. (*See* Ninth Am. Scheduling Order, ECF No. 402.) The deadline for rebuttal expert disclosures for both parties was September 23, 2019 (*id.*), although that deadline was subsequently extended to September 27, 2019 (Tenth Am. Scheduling Order, ECF No. 444).

On September 5, 2019, then-Defendant Barry Israel ("Israel") timely gave notice of his designation of John S. Luna, CPA, JD, MBA, as a testifying expert and included Luna's expert report. (Ex. B to Thompson Decl., ECF No. 596; *see also* Theodore Frank Email, ECF No. 590-1.) On the same day, Israel also gave notice of his designation of Robert L. Kehr, Esq. as a testifying expert and included Kehr's expert report. (Ex. C to Thompson Decl., ECF No. 596.) Although both expert reports attached mention the experts being retained by counsel for both Israel and Lujan, and both reports included the experts' opinions for both Lujan and Israel, Lujan did not formally designate his own experts or file his own expert reports. When Hillbroom moved to strike one of Israel's designated expert, Robert Kehr (Mot. to Strike, ECF No. 453), Israel opposed the motion (*see* ECF No. 474), but Lujan did not join in the opposition.

Israel was dismissed from this action on July 7, 2020. (Order of Dismissal, ECF No. 536.) On October 26, 2021—over two years after the deadline to disclose experts—Lujan gave notice of his expert disclosures of John S. Luna and Robert Kehr and joined in on Israel's notice of those experts. (Ex. A to Thompson Decl., ECF No. 596.) Hillbroom now seeks to exclude those experts

for Lujan's failure to comply with Rule 26 in timely disclosing his expert witnesses. (Mot., ECF No. 593.)

### B. Legal Standard

Federal Rule of Civil Procedure 26 requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). The disclosure of such expert witness "must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). A party is required to make these disclosures "at the time and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

"Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Specifically, Rule 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*." Fed. R. Civ. P. 37(c)(1) (emphasis added). An exclusion sanction is "automatic" and mandatory unless the party violating Rule 26 can show that its failure to comply was substantially justified or is harmless. *Jimena v. UBS AG Bank*, 2010 U.S. Dist. LEXIS 117596, at *15 (E.D. Cal. Nov. 5, 2010) (quoting *Salgado v. General Motors Co*, 150 F.3d 135, 142 (7th Cir. 1998)); *see also Yeti by Molly*, 259 F.3d at 1106 ("The Advisory Committee Notes describe it as a 'self-executing,' 'automatic' sanction to 'provide[ ] a strong inducement for disclosure of material . . . .'" (quoting Fed. R. Civ. P. 37 advisory committee's note 1993)). "Courts have upheld the use of the

[exclusion] sanction even when a litigant's entire cause of action or defense has been precluded," and have found exclusion appropriate even absent a showing of bad faith or willfulness. *Yeti by Molly*, 259 F.3d at 1106.

To determine whether a party's failure was substantially justified or is harmless to qualify for the two express exceptions to the harsh exclusion remedy under Rule 37, the Ninth Circuit considers factors including: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010). "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly*, 259 F.3d at 1107.

Moreover, "[i]n addition to or instead of [the exclusion] sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).[2]" Fed. R. Civ. P. 37(c)(1). "Wide latitude" is given to a district court's discretion to sanction under Rule 37. *Yeti by Molly*, 259 F.3d at 1106.

C. **Discussion**

Hillbroom seeks to exclude Lujan's two designated experts—John Luna and Robert Kehr—given Lujan's failure to comply with Rule 26 in timely disclosing his expert witnesses. Lujan

---

[2] These include: "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2).

opposes the motion, first arguing that he *effectively* complied with Rule 26 given that Israel provided the disclosures of those two experts and that the two expert reports that were served on Hillbroom's counsel list Lujan as a client and specifically address the basis and substance of the experts' proffered testimony with respect to Lujan as well as Israel. (Opp'n at 2, ECF No. 595.)

The Court, however, rejects Lujan's argument that he "effectively" complied with Rule 26. While both expert reports do mention being retained by both Lujan and Israel (*See* Ex. B and C. to Thompson Decl., ECF No. 596), Rule 26 requires that each party timely provide disclosures of its intended expert witnesses. Lujan failed to give notice of his own designated experts and failed to join in on Israel's experts in 2019 in utter disregard of Rule 26, and he should not be able to circumvent the rules by arguing that substance trumps due process requirements. The Court therefore finds that Lujan violated Rule 26 by failing to timely disclose his experts in accordance with the Court's Ninth and Tenth Scheduling Orders.

Where the Court finds that Lujan violated Rule 26, he in the alternative concedes that there is no substantial justification for his oversight in compliance despite having previously appeared pro se, given that he is "an experienced litigator in his own right." (Opp'n at 5.) However, he argues that his failure to comply with Rule 26 nonetheless falls under the second exception to the harsh exclusion remedy under Rule 37: harmlessness. Specifically, Lujan argues that the expert reports prepared by his now-designated experts have been disclosed to Hillbroom since September 5, 2019, albeit via Israel, such that Hillbroom was put on notice through these reports of the experts' qualifications, the substance of their proffered testimony, and even the fact that they intended to testify on behalf of Lujan. (Opp'n at 7.) Lujan also notes that he was referenced multiple times in the reports, and the separate engagement agreements between Lujan and the experts are also included in the reports. (*Id.*) Hillbroom therefore cannot claim surprise

or prejudice when he was essentially placed on notice, and the trial date would not be impacted by allowing Lujan's experts to testify. (*Id*. at 6-7). Lujan also highlights that no bad faith or willfulness was involved, and that this was merely an oversight (*Id*. at 8.)

The Court, however, rejects this argument that Lujan's failure to comply with Rule 26 was merely a mistake or an "oversight." Instead, the Court is more in accord with Hillbroom's argument that Lujan's actions were intentional and done in bad faith. (*See* Reply at 3.) Notably, Lujan is a seasoned attorney and has expressly joined in on numerous of Israel's motions. (*See* ECF Nos. 206, 292, 312, 339, 373, 409, 411, 439, 454, 505, 518.) The Court agrees with Hillbroom's argument and finds it plausible and more reasonable that Lujan intentionally did not designate or join Israel's experts in 2019 so that he could challenge their testimony in case their trial testimony did not go as hoped or expected. (Reply at 3.)

Nonetheless, the Court finds that Lujan's noncompliance was harmless. The expert reports provided to Hillbroom through Israel did in fact discuss Lujan thoroughly and contained opinions for both Israel and Lujan such that it placed the parties on notice of the opinions that the experts were going to potentially testify to regarding both defendants. Whether Lujan retained the experts merely for consulting or additionally for testifying does not change the substance of the expert opinions provided in the reports. Moreover, the fact that Hillbroom chose not to strategically depose those experts and *could* have acted differently if they were noticed by Lujan does not render him prejudiced by Lujan's failure to disclose when the requisite information was provided for long ago.

The Court therefore declines to impose the harsh exclusion of remedy of Lujan's untimely designated experts and their testimonies. But due to Lujan's failure to comply with Rule 26, the Court awards Hillbroom attorneys' fees and costs for having to file and litigate this motion in

limine that resulted from Lujan's noncompliance.³ *See* Fed. R. Civ. P. 37(c)(1) (permitting attorney's fees as a sanction).

## II. JOINT MOTION TO ALLOW VTC TESTIMONY

Plaintiff Hillbroom and Defendant Waibel on October 26, 2021 filed a joint motion to allow VTC testimony to permit Hillbroom, Waibel, Israel, and Hillbroom's legal expert (Robert Sall) and accounting expert (Jeffery Brandlin) to testify via video teleconferencing. ("VTC Mot.," ECF No. 593.) Lujan subsequently opposed the motion. ("VTC Opp'n," ECF No. 597.) While Lujan's opposition was untimely resulting in Hillbroom moving to strike (ECF No. 598), the Court denied the motion to strike (ECF No. 608) and granted Hillbroom an extension in the alternative in filing his reply, which he did ("VTC Reply," ECF No. 610). The Court GRANTED the joint VTC motion at the hearing for the following reasons.

### A. Background

When trial was previously set for November 19, 2019, Defendant Israel moved the Court for an order authorizing trial testimony by Hillbroom by contemporaneous transmission from a different location in Spokane, Washington (ECF No. 449), and Lujan joined that motion (ECF No. 454). After hearing arguments from counsel, the court GRANTED Defendants' motion to allow Hillbroom to testify via VTC. (*See* Order Granting Motion, ECF No. 478.) The Court found good cause given that all parties agreed that the testimony should be presented by transmission. (*Id.* at 2). However, appropriate safeguards that the Court adopted included: (1) at least one week prior to trial, Defendants must contact the Clerk's office to arrange an equipment test with the Court's IT personnel; (2) no person other than the employees necessary to operate the VTC

---

³ However, in light of the parties' recent stipulation of dismissal, it appears that this grant of attorneys' fees is now mooted.

system shall be present in the room while Hillbroom is testifying, and no other person may be in communication with Hillbroom during his testimony, other than the Court and the examining attorneys; (3) Defendants must ensure that Hillbroom has access to all documents that may be presented during the examination, meaning that the parties must provide electronic or physical copies of any documents that they will seek to use during his testimony; (4) the use of the Court's ELMO system is acceptable so long as the jury is able to view Hillbroom via VTC at all times during his testimony; and (5) Defendants will be responsible for the costs associated with the remote testimony in their case in chief only, including reasonable lodging costs. (*Id*. at 2-3.)

In the final pre-trial order for the November 2019 trial date, the parties also stipulated that experts may testify via video teleconferencing provided that the following safeguards, similar to Hillbroom's safeguards, be taken: (1) at least one week prior to the expert testimony sought to be presented, the party seeking to present their expert's testimony via VTC must notify the parties and the Court of their intent to do so; (2) the party seeking to use VTC must contact the Clerk's office to arrange an equipment test with the Court's IT personnel at least one week prior to the anticipated testimony; (3) no person other than the employees necessary to operate the VTC system shall be present in the room while the witness is testifying; (4) no person may be in communication with the witness during his testimony, other than the Court and the examining attorneys; (5) the examining party must ensure that the witness has access to all documents that may be presented during the examination, meaning that the parties must provide electronic or physical copies of any documents that they will seek to use during the witness' testimony; (6) the use of the Court's ELMO system is acceptable so long as the jury is able to view the witness at all times during his testimony; and (7) the party seeking to present the witness via VTC is solely responsible for the costs associated with the remote testimony. (*See* Final Pre-trial Order ¶ 21,

ECF No. 513.) Any other witnesses that the parties sought for VTC testimony needed to be filed in accordance to this Court's Local Rules and Federal Rules of Civil Procedure (*Id*. ¶ 12.)

However, since then, the parties have filed new statements for pre-trial matters for trial that was intended to occur on December 7, 2021, in which the parties stated that "[i]f a party intends to seek leave to present testimony from any witness by videoteleconference ("VTC") in their case-in-chief at trial, that party must file or refile a motion for leave within the new deadlines set by the court." (Pl.'s Statement on Pre-trial Matters ¶ 3, ECF No. 576; Lujan Statement on Pre-trial Matters ¶ 3, ECF No. 577.)

Plaintiff Hillbroom and Defendant Waibel therefore jointly move the Court to allow for VTC testimony for "Plaintiff, Defendant Waibel and any or all of the witnesses they may call." (VTC Mot., ECF No. 593.) Although they broadly refer to "any or all of witnesses they may call," the memorandum (ECF No. 593) and Plaintiff's counsel Rachel Dimitruk's declaration (Dimitruk Decl., ECF No. 593-1) identify the following individuals and their current locations: (1) Plaintiff Junior Larry Hillbroom, who is currently incarcerated at FDC Sea-Tac in Tacoma, Washington while awaiting sentencing for Feb. 8, 2022 to occur in Idaho; (2) Hillbroom's legal expert, Robert Sall, who is located in Laguna Beach, California; (3) Hillbroom's account expert, Jeffery Brandlin, of Brandlin & Associates, who is located in Los Angeles, California; (4) Defendant Keith Waibel, who is 69 years old and lives in Morro Bay, California; and (5) Barry J. Israel, who is currently staying in Los Angeles and intends to be there during the period of trial. (VTC Mot. at 4; Dimitruk Decl. ¶¶ 3-7.) Hillbroom and Waibel argue that "the risks of extended air travel over the extreme international distances that Plaintiff's witnesses and Defendant Waibel would have to travel to attend, in-person, the trial in Saipan and the inordinate cost that Plaintiff would incur if Plaintiff's expert witnesses were required to clear CNMI quarantine procedures prior to

their in-person testimony" demonstrate good cause and compelling circumstances to allow VTC testimony. (VTC Mot. at 6-7.) They primarily argue that air travel during the COVID-19 pandemic dramatically increases personal risks to illnesses, especially for long distance international travels, not only in the airplanes themselves but even at security lines and terminals. (VTC Reply at 3.) Moreover, they note that the witnesses are over 60 years of age. (*Id*. at 5.)

### B. Legal Standard

Federal Rule of Civil Procedure 43 governs the taking of testimony. Generally, witnesses' testimony must be taken in open court unless otherwise provided by rule or statute. Fed. R. Civ. P. 43(a). However, "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." *Id*. Compelling circumstances include illness, accident, and legal impediment, as well as burdens related to long-distance travel. *See Scott Timber, Inc. v. United States*, 93 Fed. Cl. 498, 501 n.3 (2010); *Sprint Nextel Corp. v. Yoak*, 2014 WL 6796074, at *1 (E.D. Mo. Dec. 2, 2014). "Good cause and compelling circumstances may be established with relative ease if all parties agree that testimony should be presented by transmission." Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment. Moreover, "[c]ontemporaneous transmission may be better than an attempt to reschedule the trial, particularly if there is a risk that other--and perhaps more important--witnesses might not be available at a later time." *Id*.

However, "[t]ransmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial." *Id*. Moreover, "[a] party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances." *Id*.

Whether good cause and compelling circumstances exist for Rule 43(a) is a matter for the court's discretion. *Thomas v. Anderson*, 912 F.3d 971, 977 (7th Cir. 2018). Additionally, the Court must consider whether there are "appropriate safeguards" in place to (1) to ensure that the witness testimony may be tested by cross-examination, and (2) to allow the trier of fact to observe the demeanor of the witness. *In re Adair*, 965 F.2d 777, 780 (9th Cir. 1992); *see also* Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment ("Safeguards must be adopted that ensure accurate identification of the witness and that protect against influence by persons present with the witness. Accurate transmission likewise must be assured."). Moreover, "[a]dvance notice is important to protect the opportunity to argue for attendance of the witness at trial." *See* Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment.

C. **Discussion**

Lujan opposes Hillbroom and Waibel's joint motion for multiple reasons, arguing that: remote testimony is generally disfavored; Lujan will be disproportionately disadvantaged as he will potentially be the only witness appearing before the jury in the courtroom and his ability to evaluate the credibility of witnesses in cross-examination will be impacted; some of the witnesses involve key party witnesses, such as Plaintiff Hillbroom, Defendant Waibel, and prior Defendant Israel; the cases relied upon by Hillbroom and Waibel are distinguishable as they involved bench trials, whereas here, there will be a jury trial; several of the witnesses were identified years prior such that the current situation is not a surprise, and Plaintiff could have taken depositions to preserve witness testimony; and technical and logistical disruptions weigh against the proffered extensive use of VTC witness testimony. (*See* VTC Opp'n at 4-8, 9-12, ECF No. 597.) Lujan also argues that Hillbroom and Waibel have failed to establish compelling circumstances for transmission from different location, as inconvenience is not enough as a reason, and they have not offered any explanation as to why the witnesses cannot appear live and in person. (*Id*. at 3,

8.) Furthermore, long distance travel and COVID-19 quarantine restrictions alone should not *per se* constitute compelling circumstances, as the world has been coping with COVID restrictions for over a year and a half now and Plaintiff chose his forum. (*Id*. at 8.) Finally, Lujan contests Hillbroom and Waibel's blanket request for unnamed witnesses. (*Id*. at 4.) The Court will address these arguments in turn.

    First, the Court concurs with Lujan in that remote testimony is generally disfavored. The advisory committee's note to the 1996 amendment of Federal Rule of Civil Procedure 43 even notes that: "[t]he importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition." In *Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005), *r'hg and r'hg en banc denied* Dec. 6, 2005, the Seventh Circuit also recognized such importance of live person testimony. The Court reasoned that:

> [A] jury trial conducted by videoconference is not the same as a trial where the witnesses testify in the same room as the jury. Videoconference proceedings have their shortcomings. [V]irtual reality is rarely a substitute for actual presence and . . . even in an age of advancing technology, watching an event on the screen remains less than the complete equivalent of actually attending it. The immediacy of a living person is lost with video technology . . . . [I]t is to be expected that the ability to observe demeanor, central to the fact-finding process, may be lessened in a particular case by video conferencing.

*Id*. (internal quotations and citations omitted). Thus, "remote transmission [of testimony] is to be the exception and not the rule." *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 479 (D. Md. 2010). In *Shell v. Henderson*, 2013 WL 4502271, at *3 (D. Colo. Aug. 23, 2013), the district court had concerns over the "disruptions in the trial due to technical malfunctions or malfunctions (e.g. loss of video or audio connection, lag or delays in audio transmission of questions or answers, witness'

inability to hear and promptly respond to instructions from the Court, etc.)"—concerns that Lujan also raises. The district court also raised concerns over the inability of jurors "to adequately assess the demeanor of remotely-appearing witnesses, who will appear on small viewing screens rather than in-person in the courtroom," and the inefficiencies in handling documents and exhibits. *Id*.

Despite these concerns, various other district courts have recognized the advances of modern technology in minimizing many of those concerns. For example, despite expressly recognizing those concerns addressed in *Thorton*, which are the same concerns that Lujan addresses, a district court in Minnesota in allowing VTC testimony during the COVID-19 pandemic explained that:

> [A]dvances in technology minimize these concerns. The near-instantaneous transmission of video testimony through current technology permits the jury [or, in a bench trial, the Court] to see the live witness along with his hesitation, his doubts, his variations of language, his confidence or precipitancy, [and] his calmness or consideration[.] Given the speed and clarity of modern videoconference technology, where good cause and compelling circumstances are shown, such testimony satisfies the goals of live, in-person testimony and avoids the short-comings of deposition testimony.

*In re RFC and ResCap Liquidating Trust Action*, 444 F. Supp. 3d 967, 970-71 (D. Minn. 2020).

Similarly, in *F.T.C. v. Swedish Match North America, Inc.*, 197 F.R.D. 1, 2 (D.C. 2000), the magistrate judge recognized that "there is no practical difference between live testimony and contemporaneous video transmission based upon [his] experience in presiding over two hearings." Any delay experienced is between the question and its transmittal to the witness, whom answers as soon as he or she hears the question—thus, "[t]he delay observed is not therefore a delay which permits the witness an advantage he would not have if he were in the courtroom." *Id*. The judge was therefore baffled as to why anyone would force someone to travel distances for a testimony that can be secured by a means similar to live testimony and preferable to reading a

deposition into evidence. *Id.; see Julian Liu v. State Farm Mutual Automobile Ins. Co.*, 507 F. Supp. 3d 1262, 1265 (W.D. Wash. 2020) ("[M]odern videoconferencing technology allows for near instantaneous transmission of testimony with no discernable difference between it and 'live'" testimony, thereby allowing a juror to judge credibility unimpeded."). Even in *Matovski v. Matovski*, 2007 WL 1575253, at *3 (S.D.N.Y. May 31, 2007), which Lujan relies on for the proposition that inconvenience alone is insufficient, the court there had issues with telephonic testimony given the shortcomings of assessing credibility via just sound, but noted that a "live video link should be technologically feasible." These cases highlight that many of the concerns raised by Lujan regarding assessing credibility for cross-examination and technological disruptions are minimized with modern technology. Any issues regarding technological malfunctions or delays and inefficiencies on handling documents can be mitigated with the above aforementioned safeguards, which include testing equipment with the Court's IT prior to the testimony as well as providing the witness with the copies of documents to be used as exhibits ahead of time. Thus, while the Court acknowledges some of these issues that Lujan may have, these issues are curable and do not warrant excluding VTC testimony.

As to the good cause in compelling circumstances, Lujan is correct that inconvenience alone does not warrant good cause for VTC testimony. *Meeks v. Parsons*, 2010 WL 11671811, at *1 (E.D. Cal. Feb. 5, 2010) ("The length of time and distance to be traveled by a witness without more, does not warrant allowing a party to present witness testimony at trial via video conference."); *Gulino v. Board of Educ. of City School Dist. of City of New York,* 2002 WL 32068971 (S.D.N.Y. Mar. 31, 2003) ("Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial." (quoting Fed. R. Civ. P. 43 advisory committee's note (1996 Amendment))); *but see Beltran-Tirado v. I.N.S.*, 213 F.3d 1179, 1185-86

(9th Cir. 2000) (permitting telephonic testimony over a due process objection where a witness lived in Missouri but the hearing was in San Diego). But Hillbroom and Waibel are not merely relying on the long-distance travel to Saipan as their good cause and compelling circumstances. They are relying on the key factor of COVID-19 and the amplified risk of contracting COVID-19 from the long-distance travel to/from Saipan.

Indeed, various courts have recognized the COVID-19 pandemic as good cause and compelling circumstances for allowing VTC testimony. *See In re RFC*, 444 F. Supp. 3d at 971 ("[T]he occurrence of COVID-19—and its impact on the health and safety of the parties and witnesses—is undoubtably an 'unexpected' occurrence that nevertheless still permits witnesses 'to testify from a different place.'"); *see also Julian Liu*, 507 F. Supp. 3d at 1265 (finding good cause in light of the pandemic); *Argonaut Ins. Co. v. Manetta Enter., Inc.*, 2020 WL 3104033, at *2 (E.D.N.Y. Jun. 11, 2020) (finding that the COVID-19 pandemic and the month's long delay it caused as constituting good cause and compelling circumstances to hold a bench trial via VTC). Similarly here, the pandemic constitutes good cause and compelling reasons for allowing VTC testimony for the U.S. mainland witnesses who are all of elder age—especially when compounded by the rapid spread of the Omicron variant as well as the extensive travel, multiple layovers (including overnight layovers), and transfers required in travelling between Saipan and the U.S. mainland. Impacts of the COVID-19 pandemic cannot be ignored. The Commonwealth itself has suffered from COVID-19 related deaths. While the Court can control persons who enters its courthouse and implement procedures to mitigate the spread of COVID-19 in the courthouse itself, the Court has no control over the risks during travel. In a civil case where Confrontation is not at issue, the Court finds good cause and compelling reasons to allow witnesses to testify contemporaneously at remote locations via VTC where requiring in-person would place them at

severe risk of illness—even if some of the witnesses are key witnesses. As to Plaintiff Hillbroom, his incarceration alone is a legal impediment to appearing in person, therefore constituting good cause and a compelling circumstance. *See Scott Timber, Inc.*, 93 Fed. Cl. at 501 n.3.

Nor is the fact that this is a jury trial as opposed to a bench trial too concerning. Lujan distinguishes two of the cases Hillbroom and Waibel rely upon for where courts found the pandemic to constitute good cause, noting that those situations dealt with bench trials. *See In re RFC*, 444 F. Supp. 3d at 972 ("If this were a jury trial, the Court's concerns about clarity would perhaps be heightened."); *see generally Argonaut Ins. Co.*, 2020 WL 3104033 (dealing with bench trial). But in *Julian Liu*, where the district court in the western district of Washington found the pandemic to constitute good cause, the Court allowed the entire jury trial to be conducted via VTC. *Julian Liu*, 507 F. Supp. 3d at 1263. The court resolved concerns regarding jurors being distracted or not being able to observe non-verbal communications, finding "[t]o the contrary" that with "the clarity and speed of modern videoconference technology, there will be no discernable difference between witnesses' 'live' versus 'livestreamed' testimony, and the jurors will be able to assess the creditability of witnesses accordingly." *Id*. at 1266. Here, the Court also finds no discernable differences between witnesses' live and livestreamed testimony for purposes of assessing demeanor, where this Court's courtroom is equipped with up-close monitors for each individual juror such that they would be able to examine the demeanor of witnesses akin to—if not better than—live.

Hillbroom and Waibel's joint motion for VTC testimony is therefore GRANTED, on the condition that the protocols or safeguards previously outlined are adhered to. Rebuttal witnesses will also be allowed to testify via VTC.

/

### III. PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE IMPROPER CHARACTER EVIDENCE

Finally, Hillbroom also filed a motion in limine to exclude improper character evidence on November 2, 2021 (Mot. in Limine, ECF No. 594). He specifically sought to exclude all evidence of his criminal record, outstanding arrest warrant, fugitive status, and all testimony, argument, or prior acts related thereto. (*Id*. at 3). He also seeks to exclude evidence by Morgan Kinney related to such acts. Hillbroom additionally seeks to exclude any improper character evidence regarding Keith Waibel and his extramarital affairs. (*Id*. at 5.)

No opposition was filed in response to Hillbroom's motion. Under the controlling Scheduling Order at the time, the opposition deadline was on November 9, 2021 (*See* Eleventh Am. Scheduling Order, ECF No. 589.) Pursuant to this Court's Local Rule 7.1(c)(2), failure to timely file an opposition could be "deemed an admission that the motion is meritorious." But in reviewing the motion itself, the Court finds Hillbroom's motion meritorious and adopts the reasoning articulated in the brief (*see* ECF No. 594). Accordingly, Hillbroom's motion in limine to exclude improper character evidence is GRANTED.

### IV. CONCLUSION

For the reasons set forth above: (1) Hillbroom's motion in limine to exclude Lujan's expert witnesses and testimony (ECF No. 590) is DENIED; (2) Hillbroom and Waibel's joint motion to allow VTC testimony (ECF No. 593) is GRANTED; and (3) Hillbroom's motion in limine to exclude improper character evidence (ECF No. 594) is GRANTED.

IT IS SO ORDERED this 26th day of May, 2022.

RAMONA V. MANGLONA
Chief Judge